Yes, sir. Good morning. May it please the Court. My name is Ernest Young. I represent the appellants, Helene Cahen and Meryl Nissan. With the Court's permission, I'd like to reserve three minutes for rebuttal. We are appealing the District Court's dismissal of our claims under Rule 12b1 for lack of standing. Our central argument is that the District Court mistook misgivings about our case on the merits for a problem of standing. Defendants convinced the District Court that hacking of personal automobiles is extremely unlikely simply because we don't have many examples of it having happened so far. Those points may well bear on the appropriate duty of care or whether inclusion of security against hacking is part of the implied warranty of merchantability, but those are points on the merits. They are not points about standing. Standing is about whether we have the right plaintiffs to bring the claim, not about whether that claim is ultimately likely to succeed. It isn't a quick peek at the merits to screen out non-meritorious claims. A jury or court may ultimately decide that the defendant's cars are safe or not safe, but surely the car's owners are the right people to make the argument that they are not. So is your theory of standing, theory of injury that you suffered, based upon the reduction in the economic value of the car or based upon the likelihood or lack of likelihood from your perspective of an invasion by way of hacking into the system? Because I thought your first argument was this is all, it's going to be hacked at some particular point, so therefore, we have standing. But now I thought from your pleadings you're suggesting that that's changed and now you're actually looking for reduction in economic value. Judge Sessions, we have two distinct theories of standing on that point. I think at the end of the day they're not all that different. The first one is that we allege that our clients have a present economic loss because they didn't get the safe cars that they paid for. This court held in Maya that when a defendant sells you something that turns out to be riskier than it was. I was really interested to find out how you actually prove that. What representation you make, other than just a conclusory representation, the car isn't worth as much. For instance, do you have an expert to come in and say that the value of the Toyotas is reduced from X to X, X to Y, based upon the fact that this system exists? Your Honor, I think that might be very important when we're trying to prove damages at the merit stage, but Maya explicitly said that that was not necessary. In Maya, the buyers of homes sued the developers for engaging in certain practices that made their neighbor. But in Maya they alleged, or I don't remember if Maya was the motion to dismiss or summary judgment, but in Maya the price had gone down, and that was part of their claim. And you have not said that the price on the market went down or in the resale value went down or anything. Well, Maya explicitly said, and it was a motion to dismiss, that it was a present injury now and it was not dependent on future movements in the housing market. They also said... Sorry, it was not dependent on what? Any movements in the housing market in the future. They also said that you don't have to cash out the amount of the loss. It's sufficient to allege that it is worth less than we paid for it. But they allege that the price had dropped once people started foreclosing or whatever because the owners weren't living there. I mean, they were already alleging that the prices had dropped from when they had expected them and bought them. I'm not sure how that's different from alleging that the house is worth less than we thought it was when we bought it. Well, it's alleging it specifically with some evidence. Well, they didn't have any evidence of how much it had dropped. Well, but that it had in fact dropped. Well, we don't know that it had dropped because they hadn't tried to sell the house. And Maya said it was important... Well, I thought they had talked about other houses in the neighborhood. They did not rely, to my recollection, on the notion that other houses had sold for less than people thought they would. But it was a whole development. And they were saying that the price had dropped, I mean, the average house price had dropped, didn't they? They said that our houses are worth less than we thought because we have this built-in liability, this built-in vulnerability in the market in our neighborhood. But they did not ever try to sell their houses. In fact, the district court poured them out because they had not tried to sell their houses and actually realized that loss. And this Court said on appeal that you don't have to try to cash that out specifically and show that, you know, to prove that the loss happened. You don't have to realize the loss. It's enough that you allege that our house is worth less than you paid for it. But I, you know, I appreciate the fact that to make representations, probably based upon good faith, that the value of the cars went down, it's a little difficult because essentially at least on some representation that 100% of the vehicles in the country have, you know, similar kinds of problems that you've got. But what I'm interested in knowing is what evidence you have of that, whether it's by way of expert testimony, whether it's by way of surveys or anything which says that the value of Toyotas go down by whatever, 5% based upon this particular problem with the system. Your Honor, we're at the motion to dismiss stage. And so you have to take general allegations as including the specific ones. The Court also said in Maya that Twombly and Iqbal did not apply. You don't have to take conclusory statements made by people. There has to be something asserted which gives that particular statement sufficient basis. And that's what I'm asking. Do you have anything? Well, for instance, the injury doesn't have to be tangible, right? So if I allege I feel less safe in my car because I know that it is vulnerable to this sort of attack, then that is an injury in fact for standing. I'm actually quite confused why you don't—I didn't see an allegation like that in your complaint. I'm not sure I saw any kind of claim like, my injury that gives me standing is that subjectively I'm now too scared to drive my car. Did you allege something like that? Because if you did, I missed it. We don't allege. And in Maya, they did have—they claimed that, aside from the price, they also had a quality of life injury. But I didn't see you alleging, I leave my car in my garage and take the bus because I'm too scared to drive my car. We allege that the safety of the automobiles is part of what it makes them fit for the purpose for which they are bought, which is the requirement under the various California consumer protection statutes and the common law theories of warranty and misrepresentation is that we were told that these were safe. We certainly allege that we care about them being safe. And we allege that they are worth less to us because they are not safe. But economically, I think, you didn't say we're not using it as much as we plan to use it or some other thing that is elaborating in any specific way. I don't think we have to say that, with respect, Your Honor. I think if I buy a car with an airbag and I pay a certain amount of money because it has an airbag in it and I think it's going to make me safer and it turns out that the airbag doesn't work, then no one is going to say I don't have standing to sue simply because I might not ever get in an accident and the airbag—I might not ever need the airbag. And I don't think anyone would require me to prove exactly how much less the car is worth because of the airbags. And I don't think it would make any difference if you could show that all the cars had bogus airbags that didn't work, right? We're not talking about ultimately being able to realize this loss by selling it in a competitive market of some kind. Can I ask you to be a little more specific about the economic allegations? What I see is it says, had plaintiffs known about the design defects that they failed to disclose, they would not have purchased their class vehicles or not have paid as much as they did to purchase them. Is that basically it? Yes. The argument is— Right. So you're not claiming actually a diminution of value since purchasing it. You're claiming— No. It wasn't worth at the time. Right. And at the time was quite a while. I mean, one of the problems with that is that you then have to be able to prove that Toyota and GM knew about these problems when they purchased it, A, and that it was somehow in the marketplace because—in other words, that there was some awareness of this because if there wasn't any awareness of it, it wouldn't have affected the price at the time. Right? We certainly have to plead that there were — for our misrepresentation claim, for instance. They know or should have known. And then you have a limitations period problem as well, but we'll put that aside for now. Right. And those are questions on the merits, Your Honor. And I think— That's on the merits. But as to the issue of what the time period is, it seems to me that you have to then demonstrate an injury. In order to make a plausible allegation that the car was worth less when you bought it than you paid for it, don't you have to have some—doesn't the unsafeness have to be accounted for in the marketplace at the time rather than now? If we were required to cash that out into a particular amount of money, you know, in the way that you realize a loss on your taxes, I think that would be true. But if our allegation is simply that our cars are not worth as much to us because they're not safe— No, weren't worth. Weren't worth. Right. That we thought we were buying a safe car at the time, and it wasn't as safe as we thought it was. And subjectively, we might not have bought it if we'd known that it wasn't safe. I think we might have bought a used car that wasn't vulnerable to hacking because it was before they all got connected to the Internet. Well, as to— Those are two different allegations. As to the second one, i.e., I wouldn't have bought it, the question is whether you need to say something, given the remoteness of the likelihood of the actual safety problem here, as applied to any individual. I guess the question is, is alleging I wouldn't have bought it if I knew what I know now just by itself enough if one is likely to say, wait a minute, you know, you're really going to not buy this car because something that's never happened, even in the last eight years, may some third party may figure out how to get into this and drive your car off the road even though it's never happened. I don't believe it. I mean, I don't know what plausibility means under Iqbal, but does it mean I just don't believe it? Well, for one thing, Maya says Iqbal doesn't apply at the 12B1 stage for a motion to dismiss for lack of standing. But doesn't Maya just say that, cite Iqbal for the proposition that we don't really look at the merits? I don't think it means that we don't look at plausibility of your standing allegations. We just don't look at the merits. That's how I read that statement in Maya. I'm not sure exactly what modicum of more specificity I would require. It simply is clear that that is not the standard. On the merits of the question, I think this is not necessarily an objective standard. I think if we allege that we wouldn't have bought it, I think we're entitled to be paranoid when we buy our cars. So the question is what is the burden of care on the defendant, but that is a question on the merits. Your Honor. And the other allegation, which is it would have been worthless, is something as to which you, as I said, there are allegations it seems to me you have to make, including the fact that the market was aware of this. I think the allegation is that it would be worth less, but we don't have to show how much less. We don't have to quantify that. A big part of our case is injunctive relief. We simply want the cars to be fixed, and so no quantification would ever be required at any stage of the litigation. Your Honor, as I watch the time tick down, I would like to tell you about our second theory of standing, since you may not like the first one. And that is that, well, no, that we also assert injury in fact from being hacked in the future because the most reasonable time to guard against that injury is now. People pay a lot of money to guard against future risks when they buy cars, and the laws of torts and warranties impose an obligation to go and to guard against those sorts of risks up front. And the defendants have violated those obligations to our clients at the moment they sell us a car that does not meet those standards imposed by the Consumer Protection Act. I don't understand what you're addressing now. Well, you said in the Pacific Lumber case that risk itself is an injury and that there are a lot of legal rules that guard against probabilistic injury. You were talking about environmental. But Judge Friedman was saying that the subjective sense of the risk doesn't seem to be alleged here. Well, I think it is alleged when we say we thought we were buying a safe car, we thought that the California protection laws required us to be sold a safe car, and that this was not fit for the purpose because it wasn't. I mean, it seems like the district court understood this complaint to be making an allegation about the price dropping, some economic argument. And you could have gone back to the district court and said, no, no, no, we're alleging a subjective thing. We're alleging that we are so scared we stay up at night because we're losing sleep and therefore whatever because we're so scared about our cars. I don't see anything in the complaint like that. I think those are all consequential injuries that might follow from the violation of our legal right to have a safe car. But injury in fact is a violation of our legal rights. And the legal right that we have is to be sold a car that is fit for the purpose that it is sold to us for. That's what the consumer protection laws say. That's the right that they create. And when those rights are violated by not selling a safe car, that is itself injury in fact. And so there are a variety of consequential injuries that might follow on from that. Maybe we do get hacked in the future or maybe we're scared. There's nothing in the complaint which in which you rely upon the subjective impact on a potential driver as a basis for standing. We do not plead particular consequential injuries flowing from beyond our legal injury in fact because Article III does not require us to do that. So if we disagree with you and we think that this complaint reads like you're alleging a price drop which you haven't specifically alleged, so we think you need something else. Could you amend to say subjectively we're not driving these cars because we're too scared or something like that? I think we could amend that. And so should you have an opportunity to do that even though when you were given that opportunity before you didn't take it? Well, certainly. I think that would be better. We didn't think that was necessary because we think that's not what Article III requires. I think the EPIC amicus brief explains this very well, that there are injuries in fact, which are violations of legal interest, and then there are consequential damages that might flow beyond that. But that is not part of the Article III. Okay. I notice that you have not in fact discussed the privacy claim at all. Yes. Is that because you're abandoning it? No, I like the privacy claim very much because if you drove around in a Toyota this morning, you were broadcasting your whereabouts. So that is a present injury. Do you have any allegation in your complaint that the information you're broadcasting is individually identifiable? I believe we do. Where is that? It is incorporated in the Markey Report, which I believe talks about that this stuff can be isolated and identified. But I don't have a paragraph to cite for you. On rebuttal, if you could point to where your complaint says it's individually identifiable, that would be helpful. But I don't think it has. And also what it is. When you say, I'm assuming that the fact that they know how your car is mechanically operating is not a privacy claim for you. So therefore, it seems to live and die with the locational issue. Well, if I drive too fast or it reflects various information about driving habits, for instance, which might be an issue of privacy. My wife hates it when I plot. You do allege location. Right. Clearly. But the question is whether you can then link the location to the actual identity of the driver. I think whether California law would require that to have a privacy claim is a question on the merits and not a question for standing. Well, I don't know. I mean, we may not agree with you. So, I mean, for you to have a privacy claim, I think it's at least possible that you would have to say the privacy claim affects me, that there's something about me that people are learning in order to have standing. I mean, you might disagree, but it would be helpful to know whether you did allege something like that. I think that the information about me is being taken, right? But if no one would ever know it's about you, then it's a little hard to see how it injures you. Well, the California law does not require disclosure as. Well, but we have a standing rule in federal court that we have to figure out whether you're actually injured. So California, whether California on the merits cares is a different question. I think that's true. But this court on remand in Spokio said that certain statutes or I think state constitutional provisions create rights that if intrusion on that particular right is itself the injury. And our position would be that the unwarranted collection of personal data is the injury itself. And that's all that Article 3 requires. You've got a claim under the California Constitution. The question is whether this kind of information is that kind which is essentially protected under the right of privacy in California. Is it? Is that kind of technical information about the location or the manufacturing aspects of the vehicle, that kind of information which should be protected by the Constitution? We argue that it is. The location evidence in particular is. Just all the location. I think that's the best case for us. I think that we could make arguments when we get to the merits about whether the other things were also privacy issues. But location is the issue that the Supreme Court's taking. Very important as to whether, in fact, whether somebody could say the car went here and this car is actually being operated by or is owned by this person. So this person's individual privacy concerns would be at risk. And I just don't know if that's the case or not. Okay. All right. Thank you very much. And we'll give you a minute in rebuttal. Thank you. Good afternoon, Your Honors. Chris Chorb on behalf of the defendants, the Toyota defendants. May it please the Court. Along with my colleague, Ms. Falvey, we've agreed to divide the argument. With the Court's permission, I will handle the Article III issues as well as any alternative specific grounds to Toyota. And Ms. Falvey will address the privacy claim both on the merits and on Article III. Your Honors, connected technology presents both opportunities and challenges for product innovation and consumer safety. These policy issues presented by these technological advancements deserve careful attention, but this lawsuit is not the proper vehicle to tackle these issues. The district court here properly rejected plaintiff's claims, all of their claims, because they rested on a purely speculative theory of injury. And Judge Orr correctly dismissed this putative class action. Is that because, I mean, at points you seem to be saying that they themselves have to allege that they've been hacked or are in imminent danger of being hacked. As opposed, I mean, suppose they could, or take the Toyota acceleration case, where, in fact, the allegation was that there were X number of instances in which this actually happened and people were actually hurt, can I then come in and say, well, my car hasn't happened yet, but I'm really afraid it's going to. And I think my, and I can demonstrate with the blue book, that the value of these cars has dropped and I want to bring a case. The fact, does it matter that it hasn't happened to them? It needs to be one or the other, Your Honor. And that's why the unintended acceleration cases, that's why Judge Orr cited those at length. It needs to be something else, something beyond I paid money for a product. And that's exactly what's lacking here. And in those cases, Judge Selma, in the unintended acceleration cases, held in the first instance that that's something else was lacking. Because the original complaint in that case cited only that the plaintiffs purchased a product and that the product was worthless. Exactly what we had here, and he dismissed it. And then it was on the second round where the plaintiffs came forward. And you had approximately half of the named plaintiffs had either experienced sudden intended acceleration, which was the alleged defect in the case. Or they alleged that their value of their vehicles was worthless. So it had to be one or the other. It couldn't just be purchasing, paying money for a product. So it was one or the other. Here we- They allege that they're so scared to drive it because they know that these cars are accelerating on people out of control that they don't drive it anymore. It's sitting in their garage and they're taking the bus. And that was also the allegation, Your Honor, in the unintended acceleration case. And you think that's insufficient to allege standing in federal court? Your Honor, even accepting arguendo that that would establish imminent injury in fact, and we would need to look at those allegations that weren't lacking here and evaluate them, we would then have the question of causation, which the Supreme Court has held on numerous occasions, is an independent requirement of standing. And so although, and that's where a critical factual distinction would emerge from the- So then your argument would be this person is just paranoid, it's not really caused by our car or something like that? Is that what you mean by causation? No, what I mean by causation is in the example, if we use the hypothetical of the unintended acceleration and the car just, let's suppose, we would dispute this factually, that the car just accelerated on its own. There wouldn't be any intervening third party act here, any hacking. No, no, no, so let's just stick with the hypothetical. The person says, I've read in the paper that these cars are accelerating out of control. I am now not driving my car because I'm so scared about this. It's sitting in my garage and I'm taking the bus. Tell me why that isn't standing. Well, if, again, we're focused on the unintended acceleration, you'd need to examine the separate requirement that it's concrete and that it's actually particularized as that individual, which under your hypothetical it would be. Then you would need to examine that it's actual or imminent. And you'd need to look at the instances in which this- But this is what, you're throwing a lot of words around. But the question is whether if, the basic question is whether if there were a substantial number of instances of this actually happening, could someone to whom it didn't actually happen establish standing by saying, there is a risk it's going to happen, look at all these other people to whom it happened, and either I'm putting my car in the garage or I can't sell my car because no one wants it or something. Yes, Your Honor, in a specific instance, and I'm throwing a lot of- Or I can't sleep at night, I have to drive the car, I don't have any choice, but I'm miserable. And I'm throwing words around, but these words have legal meaning, established legal meaning in the Lujan case, in the Clapper case, in the Spokio case most recently. And the Supreme Court held that there's both concrete and particularized, but also the injury has to be actual or imminent, not conjectural or hypothetical. So, I mean, that's what, this is what we're trying to get at, or at least what I'm trying to get at in order to get back to this case. Does the actual and imminent have to be that the car is, your car really is going to accelerate, even if it only happened to 100 people out of a million? Or can it be that 100 out of a million is enough to make me really upset enough, and that the problem here is we don't have 100 out of a million, we have nothing? I mean, is the problem that there was no actual instance here or that it didn't happen to them? It's both, Your Honor. And the, it didn't happen to them goes to particularization, but- So you would argue that even if they had happened to 100, even if there had been 100 hacked cars which ran off their own, they still wouldn't have a case? No. And I want to be crystal clear, that is not what we're arguing, Your Honor. The only, the only point is when we're dealing with hypotheticals, you need to examine, and is it actual or imminent, or is it conjectural or hypothetical? And here, whether it's 100 out of a million, or whether it's 1 out of 100, you need to look at each case on its facts. And as Your Honor noted, here it's zero. But if, okay, so if they were alleging, which I actually don't think they are, but maybe they could amend, so we have to get to that issue. If they were alleging that I am miserable every minute of the day because of my car, the possibility that my car might be hacked, that would be an actual injury now that would already be imminent, I think. So I think you need some other response to the possibility of that as an injury. Well, Your Honor, in that specific instance, if, first of all, to address the issue of leave to amend, the Rick Mike case that we cited, it's 532 F 3rd 963, this circuit held that where the plaintiff proceeds to an appeal and forgoes the amendment that they sought in the district court, they have way of that. So to answer a question raised earlier, no, they cannot, under circuit precedent, seek leave to amend. But to address your question, in that particular instance, Maya itself, the principal case upon which they relied, yes, it held that the Iqbal Twombly analysis is ill-suited for a standing dismissal under 12B1. But at the very next breath, the court held that you have to examine the allegations and conclusory allegations are insufficient. So in Your Honor's hypothetical, you would need to look at that. Is someone fearful? Is it based on something that's actually real and that's happened? Or is it something they saw in a movie that's completely fabricated and there's- Well, in this instance, it's something they saw in a report by a senator, right? Or a representative. No, Your Honor, that's conflating, with respect, conflating the privacy claim with the hacking claim. All they've cited with respect to hacking are studies that I have to point out, the earliest study they cited was three years after Ms. Cahan purchased her Lexus, the only vehicle manufactured by my clients. So three years later. So this whole issue of what did the manufacturer know at the time- And the oddity is that she hasn't alleged that her car has lost value. No. She's only alleged that it was worth less when she bought it. No. That's right, Your Honor. And there was an argument in their appellate briefs that Judge Orrick improperly recast their allegations. Not true. He went through systematically each theory of standing and rejected it. And you also are relying upon the fact that the actual representations about loss and value is conclusory in nature. That there's no evidence being proffered to substantiate those particular allegations. That's right, the only issue, just to clarify, Your Honor, not evidence, because we are at the pleading stage, no allegation. And that's what distinguishes the three cases they cite in their brief to support their economic injury allegation are Maya, Hinojos v. Coles, and the Mazda v. Honda case. Well, I don't know that Maya actually alleged the extent of the diminution of value. They did allege that there were a lot of foreclosed houses. Right, and the point I was trying to make, Your Honor, is in each of those three cases, you had something else other than plaintiff's position on this appeal appears to be. We paid for a product, that's enough. That unlocks the Article III gate. But in all of those cases, there was an affirmative misrepresentation. In Maya, it was we are going to market to stable, reliable buyers. And we're going to have people living here who are going to occupy the homes. In fact, the plaintiffs alleged in that case, they were marketing to risky buyers. They were marketing to investors who were not going to live in the homes. In Hinojos, the basic allegation was, this merchandise at Coles is on sale. It's actually not on sale. It's always at this lower price. And finally, in Mazda, it was a $4,000 add-on option at the time in the mid-2000s. The collision mitigation braking system was a very expensive option, and it was we will prevent you from getting into an accident in certain circumstances. If you want to have your colleague, you'll argue and you're eating into her time. Thank you, Your Honor. I appreciate it. Thank you, Your Honors, and may it please the Court. Cheryl Falvey for General Motors. As Mr. Chorba mentioned, I'll be addressing the privacy claims, both on standing and on the merits. Excuse me. Now, we don't get to the merits unless we agree they're standard. Well, the viability of the claim that was discussed. I wondered about the way that was briefed, because we can't, under Steel Co., in the alternative, say, well, there's no claim here anyway, and not decide standard. We still have to decide standard. Absolutely. Absolutely, Your Honor. And so, when we look at standing, Plaintiff Neeson has had his GM car. It's a 2013 Chevy Volt, and nothing has happened with regard to its information. He's not alleged that any information from his car has been stolen, taken, inappropriately published. Instead, what he claims is that might happen because GM, allegedly, is collecting that data, and according to a senator's report, sharing that with third parties. The Markey report doesn't talk at all about specific plaintiffs. In fact, don't you make a disclosure to a buyer of a Chevy Volt that, in fact, there is this collection of data? You basically tell them they're going to collect the data, and you collect the data, I thought. That's right. That's no big surprise to anyone. The OnStar system doesn't work unless you can inform it where you are, and it can send service, whether it's sending a gasoline can for you, or coming to rescue. Well, I'm a little confused. I thought you were starting to say nothing has been collected about his car, but now you're saying, of course it's being collected, because that's how it works. Well, no. Information may be collected, and he's alleged information has been collected, and that it could have been transmitted to a third party. But that, in and of itself, in this circuit, the collection of data has not been held to be enough to reach standing. Why is that? I mean, there's the disclosure question, which may obviate it, but other than that, if somebody's looking in my window, that's a privacy violation or an injury if I don't want anybody looking in my window, no? Well, let me clarify. Whether he tells it to a third party or not. What you need to do to establish standing is you have to meet two elements. One, it needs to be particularized to you, just as you said, someone looking in my window at me. They have not alleged that here. So Planet Nisam, Norma's can. I mean, isn't the disclosure essentially, I mean, take Google. I mean, they collect everything. I don't have to prove that they collected me to know that they are at least collecting information about when I'm online and enough to target ads to me. And someone, do I have to prove that they did it to me particularly, when it's generally known that they're doing it to everybody? You have to have made an allegation. Really? That there's some way that it's particularized to you. Yes, the allegations are doing it to everybody. Therefore, they're doing it to me. But they haven't alleged that here, Your Honor. That's not in the complaint. I'm confused about whether you're saying no information is being collected from this car or whether you're saying the information that's being collected from this car is not attributable to this person. Well, he hasn't alleged that the information from his car is attributable to him. That's one issue. The second issue is, even if it has been collected and perhaps the information about his brake pads or where he is located has been collected and put somewhere. That's an assumption, but that's what he is saying could go wrong. That has to be, there's got to be some imminent threat that that information is going to be somehow disclosed or somehow used against him. Tell me why that is. He doesn't say that. He says they're disclosed to third parties. That's rather vague to see what third parties are. He doesn't say what they're doing with it. But why does it have to be disclosed to third parties? Well, there has to be some sort of actual injury in fact. Well, why isn't the injury in fact that I don't want some person in General Motors having access to where I'm driving? It doesn't, why does it have to be somebody else other than the fact that some computer in General Motors has this information, anybody in General Motors can look at it? Well, first of all, as Judge Sessions indicated, you're told that when you buy the car and you have the option to opt out of that. But I don't understand the disclosure point. Well, there's no case that's been cited here that says simply because conjecturally. Why isn't it the case that if I don't want General Motors to know where I'm driving and General Motors has set this up so they know where I'm driving, they're invading my privacy. I mean, maybe it isn't enough for a cause of action. But if you say, you know, I'm a spy, I don't want anybody knowing where I'm going. And General Motors knows where I'm going, whether they're telling anybody else or not. Why, what's the relevance of the disclosure? Well, first of all, General Motors is not alleged in the complaint to know where his Chevy Volt is. I mean, he does not make that allegation. Do you mean because he doesn't say it's him or because he doesn't say they're collecting it about anyone? He doesn't say it's about him. But that's the point about Google. That makes no sense. I mean, if he says they're collecting about everyone, then they're collecting about him because he's one of everyone, right? Right, but there's no allegation that they can tie it to him necessarily. Okay, well, that's a different point. It could be anonymized. That's a different point, though. That's... And he hasn't made that claim. And so we have to have some evidence that there's a concrete and actual injury that could occur to him based on GM having that data. Can I just get some clarification? So there's clearly, there's data which is being transferred to General Motors or someone else, and a fundamental question is for him to suffer some personal injury, there needs to be linkage between the data and the individual. I mean, I think that's what we're asking. First of all, was there any representation in the complaint which suggests that that's at the heart of their privacy complaints, that is at the heart of the injury? And second, as a practical matter, is there a way that you can make linkage between the data and the individual so that the individual thereby suffers as a result of disclosure of this data? There's no such allegation in the complaint that indicates that his personal data from the car can be linked to him in any way, shape, or form. And that's exactly what Judge Oreck was looking for when he invited an amendment to the complaint, which they sought an extension to do, and then failed to do, and came before the court on appeal instead. So since there was no complaint alleging that, then there was no representation that there is that linkage between the data and the individual? There is no complaint, there's no allegation in the complaint that links the data to the individual named plaintiffs for the cross-section. Is the Markey Report, has it been claimed to be incorporated in the complaint, and is it incorporated in the complaint? It's been referenced in the complaint, yes, Your Honor. So it could be, I mean, according to the standards for incorporation. Well, it has all sorts of material in it about car dealerships and disabled vehicles, if the cars do not keep up with their payments, or if they've been reported as stolen. So they must be able to keep up with individual locations. There's nothing in there that suggests that there's a way to tie that information to individuals. It's totally theoretical. How can you then track and disable vehicles if the drivers don't keep up with their payments if you don't know where they are? Individually. I don't think that the report specifically says that you can. I just read the report. Go ahead and read that again, let me. Car dealerships and navigation systems providers have also begun to use remote disabling, which enable them to track and disable vehicles if drivers do not keep up with their payments, or if cars have been reported as stolen. And again, that's not at all tied to either the manufacturers here in the court, or the cars at issue. There's nothing to tie it to a plaintiff or a car at issue. Is if General Motors, the financing wing of General Motors, determines independently that somebody hasn't paid their bill, they can then access the particular car and into the location of the car and disable the car at that point. Not necessarily providing data, which is private in nature, just using the fact that there hasn't been payment to then disable the vehicle. But there's nothing to suggest that could happen to a Chevy Volt that was made in 2013 or a Lexus in 2008. Didn't the market report say it was all the cars in those years? There's nothing in the report that substantiates that, Your Honor. Does it allege it? I mean, does the report say? I thought part of your answer to their allegation that the price dropped was, how could it drop because it's all cars? I thought that was part of your response. So that suggests to me that whatever the market report is saying is about all cars that are sold in those years? No, what all cars have is a canned bus system that could potentially be hacked. The market report is very separate. And the market report's looking at privacy and the data collection aspects of that that really don't rely on the canned bus for hacking. Again, I think that the privacy claim here, the issue underlying it is incredibly theoretical in terms of nothing having been stolen, etc. We haven't talked about the underlying California constitutional claim. But given time, I just want to make one point, the seriousness that the Constitution requires. There's no case that says that simply geolocation information in and of itself rises to the level of serious egregious social norm breach. Well, the Supreme Court is hearing a case about that in a criminal context. And it's certainly, yes, they are. Are you looking at me like I don't know what I'm talking about? But there's a Supreme Court case about whether GPS data from cell phones. In the criminal context, yes, Your Honor. In the criminal context. But it only is if it's an invasion of privacy. So there certainly have been, certainly at least a fresh issue. And there has been some cases that have held in the criminal context. But it's the same question. If somebody knows where you are, and you don't want them to, because they're using your cell phones. And part of the allegation here, as I understand it, is that it is through cell phones because of the Bluetooth. There is a Supreme Court case in which a tracking device was put on the bottom of the car, and essentially the location of the car was found sufficient to afford Fourth Amendment protection. That was four years ago, but regardless. None of those allegations are in this complaint. And while they're very interesting, the judge ordered- I mean, I must say that the most offensive part of your briefs was the notion that there isn't a privacy interest in, or that categorically, isn't a privacy interest in people knowing where you are. I mean, I ask anybody on the street, and they will all tell you that, in their opinion, there is. They don't want somebody that don't want to know where they are to know where they are. But the location of the car on the street is known by people observing it. There's nothing inherently private about that. Cameras are tracking that. That's exactly what the issue was about in Jones. And so the bottom line here, Your Honor, is that there's nothing that says that the Chevy Volt or the Lexus 2008 is known as to where it is by either of the manufacturers. I'm assertive. Thank you very much. Okay. Thank you very much. Thank both of you. You may have a minute. Your Honor, if I could just start with the last point. The district court didn't have jurisdiction to rule against us on the merits because it had already found that it had no standing. We understand. We had no standing. The other thing I would point out is just under the California case law, the seriousness of the intrusion and the existence of a privacy interest in the first place is meant to be a filter to filter out the minimus claims. The later cases, Sheehan, Loader, Lundgren, all say that the important element of this is the balancing and that that's best not resolved on the plea. Have you found anything in your complaint that says that it's individually identifiable, meaning the information could be tied to the driver? Your Honor, I think the best thing we've got is paragraph 50, which says that defendants collect large amounts of data and they transmit the data to third party data centers without effectively securing the data. And we think- That says nothing about whether it's connected to which car and which driver. Well, we think that that's a general allegation that includes they're not anonymizing it. And by incorporating explicitly by reference the- Go ahead. Would you like me to get the Markey report? It does include that information about the fact that- For some reason, you haven't relied on the Markey, until I said that, there was no indication that you were relying on the Markey report as being part of the complaint. I tried to, if I didn't, then I misspoke. But we have incorporated by reference. And if they can identify people that are behind in their payments, then they can tell that it's individual people. I guess there's a difference between identifying them and collecting the data and keeping it. That's true, but we do have a specific allegation that they're not safeguarding the data, which I do think speaks to that. So they're now saying that you haven't said that these cars are what's being discussed in the Markey report, that there's nothing to say it's these manufacturers. How do you respond to that? The Markey report is quite specific about the manufacturers that responded and what- Well, actually it's not. It has little charts, but it doesn't say which manufacturers do what. Right, well, some of it is separated out, but not everything. Our allegation is that GM and Toyota do, in fact, do this. That sounds like a great summary judgment issue if they think that we're wrong about this. But I think that is a question on the merits and not a question about whether they're the right people to assert that claim. Okay, thank you very much. Thank both of you for your arguments. The case of King versus Toyota is submitted. And we'll go to the last case of the morning, not even of the day, Aloudi versus Intramedic Research Group.
judges: Berzon, Friedland, Sessions